# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A CRIMINAL COMPLAINT

I, Ryan P. Doyle, being first duly sworn, hereby depose and state as follows:

*Introduction and Agent Background*

1. I am a Detective with the Newport Police Department ("NPD") and a Task Force Officer ("TFO") with the U.S. Drug Enforcement Administration ("DEA"). I have been a TFO since January 2021, and a Detective since 2014. Prior to becoming a Detective, I was a police officer with the Newport Police Department since 2007. As both a TFO and Detective, I have participated in investigations of narcotics trafficking and have conducted or participated in surveillances, the execution of search warrants, debriefings of informants and reviews of recorded conversations. Through my training, education, and experience, I have become familiar with the manner in which narcotics are packaged, distributed and transported. I am currently assigned to conduct investigations in the Providence District Office (PDO) of the DEA. I have prepared numerous affidavits in support of applications for State and Federal search warrants. My duties include the enforcement of federal criminal laws, including controlled substance violations and money laundering, under Titles 18 and 21 of the United States Code.

2. I submit this affidavit in support of a Criminal Complaint for Jonathan KING (DOB xx/xx/1991), charging him with one count of conspiracy to distribute and possess with the intent to distribute more than 400 grams of fentanyl and Xanax tablets (containing alprazolam, a schedule IV controlled substance), in violation of 21 U.S.C. §

846, one count of possession with the intent to distribute more than 400 grams of fentanyl in violation of 21 U.S.C. §§ 841 (a)(1) and (b)(1)(A), and one count of possession with intent to distribute Xanax tablets (containing alprazolam, a schedule IV controlled substance) in violation of 21 U.S.C. §§ 841 (a)(1) and (b)(2).

3. I further submit this affidavit in support of a Criminal Complaint for Corey MARTINEZ (DOB xx/xx/1973), charging him with one count of distributing Xanax tablets (containing alprazolam, a schedule IV controlled substance) in violation of 21 U.S.C. §§ 841 (a)(1) and (b)(2).

4. I further submit this affidavit in support of a Criminal Complaint for Erin SMITH (DOB xx/xx/1969), charging her with one count of distributing more than 400 grams of fentanyl in violation of 21 U.S.C. §§ 841 (a)(1) and (b)(1)(A).

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement agents. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. I have also relied on information provided to the DEA by a Confidential Informant who I will only refer to as "CI-1." In order to protect CI-1's identity, I will refer to CI-1 with a masculine pronoun regardless of CI-1's gender.

6. CI-1 has been providing information to the government since May 2021. CI-1 has a criminal history which includes disorderly conduct and misdemeanor shoplifting. CI-1 also currently has three criminal cases pending: one Rhode Island

State case for possession of a Schedule I to V controlled substance; one Massachusetts State case for Larceny over $1,200; and one Federal case before this Court for possession for one count of violating 21 U.S.C. §§ 841 (a)(1) and (b)(1)(B) and one count of violating 21 U.S.C. §§ 841 (a)(1) and (b)(1)(A). CI-1 has previously cooperated with law enforcement, having served as an informant to Cranston Police. Since the start of his cooperation with the DEA, he has provided information that I or other law enforcement agents have independently corroborated through toll records, recorded conversations, video recordings, physical surveillance, and other law enforcement confidential sources. He has proven to be a credible and reliable informant. I have never found him to have provided false information.

7. CI-1 was previously a subject of an investigation I conducted in an undercover capacity. CI-1 informed me that he obtained pills via a supplier whom he communicated with via the WhatsApp application. CI-1 knew his dealer by his WhatsApp handle, "Poe," but also knew that his last name was King. CI-1 provided me with a screenshot of his WhatsApp conversation with Poe, showing a large quantity of pills.

8. DEA personnel arranged several controlled buys with "Poe" utilizing CI-1. "Poe" was later identified as KING after another DEA TFO recognized CI-1's description of "Poe" based on the TFO's knowledge of KING from previous narcotics investigations. CI-1 was shown a photograph of KING and confirmed this identification.

9. On May 17, 2021, CI-1, under my supervision, called KING on his cell phone and arranged for a controlled buy of approximately 2,000 Xanax (alprazolam) pills. KING agreed, and stated that he would be arriving at CI-1's residence at approximately 6:30 p.m.

10. Prior to the meeting, I searched CI-1 for contraband with negative results. At the agreed-upon time, a man arrived at CI-1's residence driving a rental vehicle. The man met with CI-1 in the rental vehicle, which was parked outside of CI-1's residence, and provided CI-1 approximately 2,000 pills in exchange for $1,800. This transaction was not captured via video or audio surveillance due to a technical issue. I personally observed the transaction occur, although I did not specifically see the pills being passed to CI-1.

11. Following this transaction, law enforcement followed the man, who drove to Mr. Bigg's Saloon in Johnston, RI where he met with KING. Law enforcement then followed KING from Mr. Bigg's Saloon to the King's residence at 175 Federal Way, Apartment 101, Johnston, RI. A records review of the rental vehicle driven by man showed that the address on file for this rental vehicle was 175 Federal Way, Apartment 101, Johnston, RI.

12. The man who had provided CI-1 with the pills was also recognized by the same DEA TFO who had identified KING as MARTINEZ. MARTINEZ is KING's father, and the TFO who identified him was able to do so based on his familiarity with KING's family. A photograph of MARTINEZ was obtained from his police record and

shown to CI-1, who positively identified MARTINEZ as the man who had sold him 2,000 pills on May 17, 2021. The 2,000 pills sold to CI-1 were later sent out for laboratory analysis, and while the results are still pending, the pills are similar in shape and appearance to Xanax pills that have previously tested positive for alprazolam, a schedule IV controlled substance.

13. On May 25, 2021, CI-1 contacted KING via WhatsApp to arrange for a second controlled buy under my supervision for approximately 4,000 pills of fentanyl. KING stated that he would be sending his "auntie" to deliver the pills, who would be meeting CI-1 at CI-1's residence. Prior to the meeting, I searched CI-1 for contraband with negative results.

14. Shortly thereafter, a woman arrived at CI-1's residence in a white Nissan sedan and met with CI-1 in the Nissan. The woman provided CI-1 approximately 4,400 pills (weighing approximately 764 grams) in exchange for $6,900. This transaction was captured via video and audio surveillance. I personally observed the transaction occur, although I did not specifically see the pills being passed to CI-1.

15. Following this transaction, law enforcement followed the woman, who stopped briefly at 1414 Park Avenue, Cranston, RI before driving to a nearby barber shop, where she met KING. Law enforcement then followed KING, who then drove to his residence.

16. A records review of the white Nissan revealed that it was registered to SMITH, with 1414 Park Ave, Cranston, RI listed as SMITH's residence. SMITH's

driver's license photo was shown to CI-1, who confirmed that SMITH was the woman who sold him the pills on May 25, 2021. The approximately 4,400 pills sold to CI-1 were sent out for laboratory analysis and returned positive for fentanyl along with lidocaine.

17. On June 3, 2021, CI-1, under my supervision, contacted KING via WhatsApp to inquire whether CI-1 could purchase 1,000 pills of fentanyl. Prior to the meeting, I searched CI-1 and his vehicle for contraband with negative results. KING informed CI-1 that he was in South Kingston and would be driving to Johnston shortly.

18. Approximately an hour later, KING was seen arriving at his residence in a rental vehicle. Shortly thereafter, KING walked over to Mr. Bigg's Saloon where he met CI-1. CI-1 purchased approximately 1,000 pills of fentanyl from KING for $2,000. This transaction was captured via audio and video recording, and I personally observed the transaction occur, though I did not specifically observe the pills being handed to CS-1.

19. The 1,000 pills sold to CI-1 were later sent out for laboratory analysis, and while the results are still pending, the pills are identical in appearance to the pills that were provided by SMITH on May 25, 2021 and which tested positive for fentanyl.

20. On June 29, 2021, CI-1, under my supervision, contacted KING via WhatsApp to inquire whether CI-1 could purchase another 1,000 pills of fentanyl. KING informed CI-1 that he was at Mr. Bigg's Saloon and needed an hour to prepare. KING was then observed driving back to his residence. Approximately two hours later, KING was seen departing the residence in the same vehicle.

21. Prior to meeting KING, I searched CI-1 and his vehicle for contraband with negative results. KING arrived at Mr. Bigg's Saloon, where he met CI-1. CI-1 purchased approximately 1,000 pills from KING for $2,000. This transaction was captured via audio and video recording, and I personally observed the transaction occur, though I did not specifically observe the pills being handed to CS-1.

22. The 1,000 pills sold to CI-1 were later sent out for laboratory analysis, and while the results are still pending, the pills are identical in appearance to the pills that were provided by SMITH on May 25, 2021 and which tested positive for fentanyl.

23. In conversations with CI-1, KING has stated that he has 1.2 million pills of Xanax pills for sale and possesses several kilograms of "Molly" (referencing 3,4-Methyl enedioxymethamphetamine, or MDMA).

*Conclusion*

24. Based on the facts contained in this affidavit, I believe there is probable cause to cause to charge that between May 17, 2021 and June 29, 2021, KING knowingly: (a) conspired to distribute and possess with the intent to distribute more than 400 grams of fentanyl and Xanax tablets (containing alprazolam, a schedule IV controlled substance) in violation of 21 U.S.C. § 846; (b) possessed with the intent to distribute more than 400 grams of fentanyl in violation of 21 U.S.C. §§ 841 (a)(1) and (b)(1)(A); and (c) possessed with the intent to distribute Xanax tablets (containing alprazolam, a schedule IV controlled substance) in violation of 21 U.S.C. §§ 841 (a)(1) and (b)(2).

25. Similarly, I believe there is probable cause to charge that on days and dates up to and including May 17, 2021, MARTINEZ distributed Xanax tablets (containing alprazolam, a schedule IV controlled substance) in violation of 21 U.S.C. §§ 841 (a)(1) and (b)(2).

26. Similarly, I believe there is probable cause to charge that on days and dates up to and including May 25, 2021, SMITH distributed more than 400 grams of fentanyl in violation of 21 U.S.C. §§ 841 (a)(1) and (b)(1)(A).

27. I, Ryan P. Doyle, having signed this Affidavit under oath as to all assertions and allegations contained herein, state that its contents are true and correct to the best of my knowledge, information, and belief.

Respectfully submitted,

RYAN P. DOYLE
Detective/Task Force Officer
Newport Police Department
U.S. Drug Enforcement Administration

Attested to by the applicant in accordance with the requirements of Fed.R. Crim. P. 4.1 by telephone.

July 14, 2021
*Date*

Providence, RI
*City and State*

*Judge's signature*

Patricia A. Sullivan, US Magistrate Judge
*Printed name and title*